IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

_____

| | | |
|---|---|---|
| WANDA E. BUCK, | ) | |
| | ) | |
| Plaintiff, | ) | CV-13-55-GF-BMM-RKS |
| | ) | |
| vs. | ) | **FINDINGS AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | **TO GRANT SUMMARY** |
| Acting Commissioner of Social | ) | **JUDGMENT IN FAVOR** |
| Security, | ) | **OF DEFENDANT** |
| | ) | |
| Defendant. | ) | |

_____

## I. Synopsis

Ms. Buck disputes the Social Security Administration's ruling that she is not eligible for disability benefits. The ALJ's determination is supported by substantial evidence and not based on legal error. While the ALJ's explanations for partially disregarding testimony of the claimant and her treating physician are not convincing, they satisfy the deferential "specific and legitimate" standard. Summary judgment should be granted in favor of the defendant.

## II. Jurisdiction

Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g). The case is assigned to United States District Judge Brian Morris and referred to the undersigned to submit findings and recommendations on dispositive motions. Doc. 10. Venue in the Great Falls Division of the District of Montana is proper because Ms. Buck resides in Cascade County, Montana. Doc. 1 at 1; 42 U.S.C. 405(g); Local Rule 1.2(c)(2).

Now pending are the parties' cross motions for summary judgment. Docs. 11, 15. The motions are fully briefed. Docs. 12, 13, 16, 17, 20.

## III. Status

Ms. Buck applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act in January 2010, alleging a disability onset date of December 10, 2009. Tr.130-139. Her claim was denied initially and again on reconsideration. Tr 82, 90-91. Ms. Buck requested a hearing with an administrative law judge (ALJ), and the hearing was held in December 2011. Tr. 30-79.

The ALJ determined Ms. Buck was not eligible for benefits in a decision issued in January 2012. Tr. 18-26. The Social Security Administration Appeals Council denied review in May 2013, Tr. 1-3, making the ALJ's determination the

Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 422.210(a).

## IV. STANDARDS

**Court's review**

Review in this case is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It requires "more than a mere scintilla" of evidence but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).

The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The court may not substitute its findings for those of the ALJ, but may reject any findings not supported by the record. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

**Disability**

A claimant is disabled for purposes of the Social Security Act if the

claimant demonstrates by a preponderance of the evidence that: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

To make this determination, the Commissioner follows a five-step sequential evaluation process. *Corrao v. Shalala*, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382C(a)(3)). If the Commissioner finds that a claimant is disabled or not disabled at any step in this process, the review process is terminated. *Id*. at 946. At step one, the claimant must show she is not currently engaged in substantial gainful activity. *Id*. At step two, the claimant must demonstrate that she has a severe impairment. *Id*. At step three, the ALJ must determine whether a claimant's impairment meets or equals the criteria of the Listing of Impairments. At step four, the claimant must establish her impairments render her unable to perform any jobs she has previously held. *Id.* If that case is

made, at step five the Commissioner has the burden to prove the claimant's characteristics and residual functional capacity allow her to perform another job that exists in a significant number. *Jones*, 760 F.2d at 995.

## V.  Facts

Ms. Buck worked in the nursing field until around 2000, when she ceased working for several years due to a work-related injury. Doc. 13 at 3. She resumed working in 2004, and from that year until 2009 she worked in a mental health center placing orders, authorizing medication, and scheduling appointments. Doc. 13 at 3. In 2008, Ms. Buck was involved in a motor vehicle accident, which consisted of her vehicle being rear-ended in a parking lot. Doc. 17 at 3.

Ms. Buck again ceased working in December 2009. She alleges that impairments caused by the car accident progressed to the point that she could not fulfill her job duties. Doc. 13 at 6. She asserts that she has been disabled since she ceased working.

The ALJ found applied the five-step sequential evaluation, and found as follows:

1. Ms. Buck had not engaged in substantial gainful activity since her alleged onset date. Tr. 20.

2. Ms. Buck had two severe impairments: back disorder and status-post

neck and shoulder injury. Tr. 20.

3. Ms. Buck's severe impairments did not satisfy the criteria of the Listing of Impairments. Tr. 20.

4. Ms. Buck was unable to perform her past relevant work as a licensed practical nurse. Tr. 24.

5. Ms. Buck had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with some additional restrictions. The ALJ found she had to be able to alternate positions regularly, had limited lifting capacity, had movement restrictions, and needed to avoid tasks involving high concentration due to pain. Tr. 21.

The ALJ determined that Ms. Buck's residual functional capacity, along with her age, education, and work experience, permitted her to perform jobs that exist in significant numbers in the national economy. Tr. 25. The ALJ provided the example of "resident supervisor" as one job Ms. Buck could perform. Tr. 25. Because he found that Ms. Buck was able to perform jobs that exist in significant numbers, he concluded she was not disabled and therefore not entitled to DIB. Tr. 25.

Ms. Buck argues:

1. The ALJ erred in using "boilerplate" language regarding Ms. Buck's credibility. Doc. 12 at 6-10.

2. The ALJ deemed Ms. Buck capable of limited light work, but the residual functional capacity the ALJ described is inconsistent with the regulatory definition of "light work." Doc. 12 at 10-12.

3. The ALJ failed to adequately explain his reasons for discounting Ms.

> Buck's testimony.  Doc. 12 at 12-16.

4. The ALJ erred by rejecting the opinions of Ms. Buck's treating physician without providing adequate reasons.  Doc. 12 at 16-19.

5. The ALJ's determination is not supported by substantial evidence.  Doc. 12 (throughout, see esp. p. 19).

The Commissioner argues that substantial evidence supports the residual functional capacity and the ALJ provided adequate explanations for his credibility determinations.  Doc. 16 at 3-9.  The Commissioner also argues that neither inclusion of boilerplate language nor the classification of Ms. Buck's residual functional capacity provide a basis to overturn the ALJ's decision.    *Id.*

## VI. Analysis

The ALJ's determination is supported by substantial evidence.  He relied on evidence in the medical record, including tests that showed only mild damage to Ms. Buck's spine, her treating physician's approval of her plan to work, physical therapy progress notes indicating that Ms. Buck's pain stabilized, and Ms. Buck's daily activities.  Tr. 21-24.

While the ALJ did not provide a great deal of evidence, it is more than a mere scintilla, and sufficient for a reasonable mind to accept as adequate support for his conclusion.  Therefore it is subject to reversal or remand only if it was based on legal error.

## 1. Inclusion of boilerplate language was not legal error.

Ms. Buck argues the case should be remanded because the ALJ's determination included the following paragraph:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Doc. 12 at 6 (citing Tr. 23).

Ms. Buck observes that this paragraph is meaningless boilerplate commonly used in ALJ determinations. She argues that the paragraph does not adequately explain the basis for rejecting a claimant's testimony, and "implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it can't be." Doc. 12 at 8-9 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012).

Ms. Buck is correct: this paragraph is often included in ALJ determinations. She is equally correct that the language is unhelpful to judicial review. By itself, the language would not justify the ALJ in discrediting Ms. Buck's statements regarding the severity of her impairments.[1] However, she

---

[1] Sufficiency of the evidence and the ALJ's bases for discrediting Ms. Buck's testimony are addressed elsewhere in this analysis.

provides no Ninth Circuit authority in support of her position that inclusion of the paragraph renders the entire determination invalid. Nor does *Bjornson*, from the Seventh Circuit, hold that inclusion of meaningless boilerplate necessitates remand. Rather, it advises that the "Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" 671 F.3d at 645.

Ms. Buck's argument that the offending paragraph proves the ALJ fashioned a residual functional capacity without considering Ms. Buck's credibility is unpersuasive. To the contrary, the paragraph seems to be exactly what Ms. Buck calls it: meaningless boilerplate. It cannot be interpreted as proof that the ALJ failed to weigh Ms. Buck's credibility prior to considering her residual functional capacity.[2]

There are two reasons to set aside the ALJ's decision: 1) it is not supported by substantial evidence, or 2) the decision is based on legal error. *Maounis*, 738 at 1034. Repetition of boilerplate language – while unhelpful– is neither.

### 2. Classifying Ms. Buck's residual functional capacity as "light work" with additional limitations was not legal error.

Ms. Buck disputes the ALJ's classification of her residual functional

---

[2] The ALJ's consideration of Ms. Buck's credibility is considered elsewhere in this analysis.

capacity. The ALJ stated that Ms. Buck is capable of "light work," as defined by Social Security Administration regulations, with some additional limitations. Tr. 21. Ms. Buck argues that the ALJ's descriptions of her abilities is more consistent with "sedentary work" as defined by the regulations. Doc. 12 at 10-12.

The ALJ based his conclusion that Ms. Buck is not entitled to benefits on vocational expert testimony that Ms. Buck could perform *sedentary* jobs. Tr. 25. Even if it was improper for the ALJ to describe Ms. Buck's residual functional capacity as light work with additional restrictions rather than "sedentary work," the error is harmless because the ALJ relied on testimony from a vocation expert that Ms. Buck could perform sedentary work.

### 3. The ALJ gave sufficient reasons for his decision to discount Ms. Buck's credibility

The ALJ considered Ms. Buck's testimony regarding her limited neck mobility not fully credible because of her daily activities. Tr. 23. The ALJ noted that Ms. Buck "performs most daily activities including household chores with some help from her husband. At night, she does Sudoku puzzles for 30 - 45 minutes, visits with family and goes to church."

The ALJ also discounted Ms. Buck's testimony because she said that headaches forced her to lie down two to three days per week, which is not

corroborated by the medical record; because Ms. Buck's doctor characterized her pain as "stable" two weeks after she underwent surgery; and because Ms. Buck expressed a willingness to try part-time work a few months after her surgery. Tr. 23.

In *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc), the Ninth Circuit held that an ALJ who deems a claimant non-credible must explain the finding with reasons that are "properly supported by the record [and] sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . ." Since *Bunnell*, some Ninth Circuit panels have held that if there is no evidence the claimant is malingering, the ALJ may reject the claimant's testimony only with "clear and convincing" reasons. See e.g. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Determination of the proper standard is determinative here, because the ALJ provided specific and legitimate reasons but those reasons are not clear and convincing. A claimant's daily activities are a legitimate consideration, 20 C.F.R. § 414.1529(c)(3)(i), and the ALJ cited specific activities that are supported by the transcript from Ms. Buck's hearing testimony. But this reason is not convincing.

Puzzles, church, family visits, and rinsing dishes are hardly vigorous activities. In fact, these minimal endeavors are totally consistent with severe impairments. Disability does not require a claimant to be "utterly incapacitated." *Fair . Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Similarly, the ALJ's reference to differences between Ms. Buck's testimony and the objective medical record is specific and legitimate, but not convincing. The ALJ observed that Ms. Buck told her doctor that her pain was "stable" shortly after her surgery.³ Tr. 23. The ALJ also notes that Ms. Buck testified that headaches incapacitate her two or three days a week, but there is no reference in the medical record to that level of incapacitation. Tr. 23. An ALJ may discredit a claimant's pain testimony when the alleged symptoms are not corroborated by the medical record. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Here, the ALJ cited specific instances in which he believed Ms. Buck's testimony diverged from the medical record.

However, the distinctions are not convincing. The ALJ did not cite any instance in which the record *conflicted* with Ms. Buck's testimony. He only noted a lack of explicit corroboration for certain statements. Even then, the

---

³The ALJ stated that this occurred two weeks after surgery but apparently intended to refer to a follow-up visit six weeks after the surgery. See Doc. 16 at 5; Tr. 332. The difference is not material to this analysis.

distinctions are minor. The medical record firmly establishes that Ms. Buck complained of frequent and severe headaches. See e.g. Tr. 425 ("[Ms. Buck] tells me she gets headaches three to four days out of the week. They start at the base of her skull and wrap up around her head."); Tr. 414 ("She has tried several medications in the past for headaches."); Tr. 327 ("She has occipital headaches . . . The headaches occur about 3 times a week"); Tr. 314 ("patient describes headaches as being a throbbing squeezing pain . . . On a bad day [her pain] is a 10/10"). The observation that her hearing testimony arguably went slightly further than descriptions in the medical record is specific and legitimate. It is not convincing.

    Ms. Buck's willingness to work part time does not justify discrediting her testimony. Ms. Buck testified that she had hoped to perform limited tasks for up to four hours per day, three days per week. Her supervisor could not accommodate those limitations, so Ms. Buck did not return to her job. Tr. 59-60. The issue is not Ms. Buck's *desire* to work, but her *ability* to work. That Ms. Buck unsuccessfully sought a position consistent with her claimed impairments is no reason to discount her credibility. The same goes for Ms. Buck's statement that her pain was "stable" some weeks after surgery. That statement does not support the ALJ's determination. "Stable" simply means unchanging; it does not

suggest a lack of pain. Ms. Buck went on to explain that her pain was not worse, "just sort of different" than before her surgery. Tr. 332. By her next appointment Ms. Buck reported that she was feeling worse than before surgery. Tr. 332. A brief period of stability is no evidence that Ms. Buck's pain was less severe than she claimed.

Thus, the ALJ gave some specific and legitimate reasons for discounting Ms. Buck's credibility as to the extent of her symptoms. If the legal standard is "specific and legitimate," as the Commissioner argues, the ALJ's determination of Ms. Buck's credibility should be respected. The ALJ gave no convincing reasons to discredit Ms. Buck. If the legal standard is "clear and convincing," as Ms. Buck argues, the ALJ's determination should be reversed or remanded.

The Commissioner has the better argument. *Bunnell* was an en banc Ninth Circuit decision holding that the standard is "specific and legitimate." Only a panel sitting en banc may overturn existing Ninth Circuit precedent. *United States v. Camper*, 66 F.3d 229, 232 (9th Cir. 1995). No en banc panel has overturned *Bunnell*, which therefore remains the law. The "specific and legitimate" standard is also more consistent with the general mandate that a reviewing court should affirm the ALJ's decision if it is supported by substantial evidence and legally sound. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th

Cir. 2008) (describing standard for review of administrative decision). The ALJ provided specific and legitimate reasons to discount Ms. Buck's testimony. His determination should not be disturbed on that basis.

### 4. The ALJ provided sufficient reasons to disregard aspects of Dr. Galvas's opinion

Ms. Buck argues that the ALJ improperly discounted the opinions of her treating physician, Dr. Patrick Galvas, without providing adequate reasons. Ms. Buck contends the ALJ erred in 1) discrediting Dr. Galvas's opinion that Ms. Buck could not work more than four consecutive hours, and 2) constructing a residual functional capacity that was less restrictive than the one determined by Dr. Galvas. Doc. 12 at 17-18.

The ALJ gave "significant weight" to certain aspects of Dr. Galvas' opinion, including his statement that Ms. Buck must alternate between positions. Tr. 24. The ALJ did not accept Dr. Galvas' statement that Ms. Buck could not work more than four hours per day. The ALJ fount that opinion to be unsupported by the medical record. Tr. 24.

Ms. Buck argues that Dr. Galvas' opinion is entitled to "controlling weight" if it is well supported by clinical evidence. Doc. 12 at 17 (citing 20 C.F.R. § 404.1527). Even if the opinions are contradicted by other sources, Ms. Buck contends the ALJ could not reject them unless he provided "specific and

legitimate reasons" to do so. *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

In fact, the *medical* opinion of a treating physician is entitled to special weight. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (emphasis added). "[T]he treating physician's opinion on the ultimate issue of disability is not necessarily conclusive." *Id.* The ALJ is not bound by an expert medical opinion on the ultimate issue of disability, but must provide "specific and legitimate" reasons for rejecting a treating physician's opinions. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1194 (9th Cir. 2004).

Here, the challenged opinions – regarding how long Ms. Buck could work and the details of her residual functional capacity – fall somewhere between strictly medical opinions and ultimate-issue opinions. Regardless, the ALJ found that Dr. Galvas' opinions regarding Ms. Buck's ability to work were not well supported by the clinical evidence. Tr. 24 ("[Diagnostic findings, clinical notes from Dr. VanGilder, Dr. Galvas' own treatment notes and those of his staff) do not support his opinion that the claimant cannot work beyond 4 hours a day."). Ms. Buck does not appear to specifically dispute this finding. See doc. 12 at 16-19. Thus, the undersigned must review to determine if the ALJ provided "specific and legitimate reasons" to discredit a portion of Dr. Galvas' testimony.

The ALJ noted that Ms. Buck was prepared to begin working part time in May 2010, a few months after her surgery. Tr. 24. The ALJ also relied on medical records indicating Ms. Buck's pain had stabilized since that time, presumably making her more capable of work. Tr. 24.

The ALJ's reasons here, too, are not particularly compelling. But they are specific and legitimate, and therefore adequately support his determination of Dr. Galvas' testimony.

## VII. CONCLUSION

The ALJ reviewed Ms. Buck's medical record, met with her in person, and listened to her testimony and testimony from a vocational expert. The ALJ considered the evidence and weighed the credibility of Ms. Buck and her medical providers. He determined that Ms. Buck was able to perform some types of work despite her impairments.

The evidence before the ALJ was susceptible to more than one interpretation. Ms. Buck persuasively argues that the credibility determinations and ultimate determination could have been resolved in her favor. But review of the ALJ's decision is "highly deferential." *Valentine v. Commissioner of Social Sec. Admin.*, 574 F.3d 685, 690. (9th Cir. 2009). The court's job is simply to determine if the ALJ made a determination based on the correct legal analysis,

and if that determination is supported by substantial evidence.  That standard is met here.

The court FINDS:

1. The ALJ's determination is supported by substantial evidence.

2. The ALJ's determination is not based on legal error.

The court RECOMMENDS:

1. Ms. Buck 's Motion for Summary Judgment (Doc. 11) should be DENIED.

2. The Commissioner's Motion for Summary Judgment (Doc. 15) should be GRANTED.

3. The Clerk of Court should be directed to enter judgment in favor of CAROLYN W. COLVIN, Acting Commissioner of Social Security.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within ten (14)days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept,

reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 15th day of May, 2014.

/s/*Keith Strong*
Keith Strong
United States Magistrate Judge